UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| EIDO HUSSAM AL-NAHHAS, ) <br> also known as Mohammad Al-Nahhas, ) <br> on behalf of Plaintiff and the putative ) <br> class members, ) <br> ) <br> *Plaintiff-Appellee*, ) <br> ) <br> v. ) <br> ) <br> ROSEBUD LENDING LZO d/b/a ZocaLoans; ) <br> 777 PARTNERS LLC; ) <br> TACTICAL MARKETING PARTNERS, LLC;) <br> and JOHN DOES 1-20, ) <br> ) <br> *Defendants-Appellants*. ) | **Case No. 23-2723** <br> <br> Appeal from N.D. Ill. <br> Case No. 1:22-cv-750 |

**REPLY
IN SUPPORT OF CONTESTED MOTION
TO VACATE THE JUDGMENT OF THE DISTRICT COURT
AND REMAND WITH INSTRUCTIONS TO DISMISS AS MOOT**

Plaintiff rendered his claims moot when he voluntarily settled with his lender (Rosebud Lending) for more than his maximum recoverable damages. Plaintiff asserts he is entitled to continue his lawsuit against the lender's alleged business partners, 777 Partners LLC and Tactical Marketing Partners, LLC (the 777 Defendants), because Plaintiff voluntarily and unilaterally allocated ▮ percent of the settlement proceeds to his lawyers, and because he is still entitled to equitable relief and punitive damages. Plaintiff's claims remain moot for several reasons.

First, Plaintiff cites no authority allowing him to avoid mootness by choosing to pay his attorneys most of the settlement amount. Mootness does not turn on how

a plaintiff spends his money, only that it was paid.  The settlement allocation is irrelevant to whether Plaintiff has recovered full relief.

But even if this Court considers allocation, the glaring gap between the one-third fee Plaintiff agreed to at the outset of this litigation and the █ percent fee his attorneys ultimately took suggests the allocation was done in a bad-faith attempt to avoid dismissal.  That rate is considerably higher than the typical 25 to 30 percent fee approved in class action settlements. Plaintiff's voluntary allocation is irrelevant but, even if considered, deserves no weight.

Second, Plaintiff's asserted interest in equitable relief is illusory. Declaratory and injunctive relief are unavailable because Plaintiff has settled with his lender and there is no legal mechanism through which any other entity, including the 777 Defendants, could attempt to collect on Rosebud Lending's loan to Plaintiff. Plaintiff cannot rely on the alleged injuries to putative (but not certified) class members to support his own standing.

Third, the law does not permit Plaintiff to aggregate multiple recoveries for a single indivisible alleged injury to manufacture a damages claim that exceeds his settlement amount. Similarly, Plaintiff seeks punitive damages under state law, but state law does not allow for punitive damages in the absence of a viable claim for compensatory damages.

# ARGUMENT

I. **Plaintiff's Unilateral Allocation of ▉ Percent of the Settlement to His Lawyers Is Irrelevant and Does Not Avoid Mootness.**

When determining whether claims are moot because Plaintiff has recovered the maximum amount to which he would be entitled, how Plaintiff decides to spend the money he recovers is irrelevant. *See, e.g.*, *Jarrett v. United States*, 79 F.4th 675, 680 (6th Cir. 2023) (in IRS refund case, mootness does not depend on whether tax payer cashed the refund check because there is "no reason that mootness should turn on what a taxpayer does with a check any more than it should turn on whether he burns a full cash payment on the spot") (citing cases); *see also Rothe Dev. Corp. v. Dep't of Def.*, 413 F.3d 1327, 1331 (Fed. Cir. 2005) ("tender of the entire amount of damages claimed by a plaintiff moots the damages claim.") (citing cases). Plaintiff does not cite any contrary authority. Mootness is determined by the amount of damages paid, not how Plaintiff spends the money.

This Court's decision in *Portalatin v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 900 F.3d 377, 383 (7th Cir. 2018), further supports this proposition. In *Portalatin*, the plaintiff received $5,000 through a settlement agreement that resolved "all claims" without allocating among those claims and further provided that "each party bears its own costs and attorney's fees." *Id.* at 381. This Court found the case moot without giving any weight whatsoever to the requirement that plaintiff would have to pay an undefined amount of attorney's fees. *Id.* at 384.

Plaintiff suggests *Portalatin* was only moot because the plaintiff "alone," and not plaintiff's attorneys, "would receive $5,000," which was the entire amount in

3

dispute. Pl. Br. at 10. But the decision makes clear, the amount plaintiff spent on attorney's fees was irrelevant to the question of mootness. In arguing to the contrary, Plaintiff confuses allocation among *claims* with allocation of *fees* between a party and its counsel. In *Portalatin*, this Court recognized that it is possible for a plaintiff to allocate settlement funds to "particular claims" to maximize recovery against a non-settling defendant if the allocation can be made in good faith. 900 F.3d at 384. However, neither the plaintiff in *Portalatin* nor the Plaintiff in this dispute did so. Instead, they settled "all claims" against the settling party for a set amount. Indeed, the Settlement Agreement provides that Rosebud Lending "███████████████████████████████████████████████████████████████████████████████████." Ex. A, ¶ 3. In other words, the ██-percent allocation to Plaintiff's counsel represents only the Plaintiff's voluntary, unilateral choice.

Like *Portalatin*, Plaintiff's Settlement Agreement provides that ████████████████████████████████████████████████ *Cf. Portalatin*, 900 F.3d at 382 *with* Ex. A, ¶ 12. Like *Portalatin*, Plaintiff's alleged harm is indivisible between the two Defendants. *Portalatin*, 900 F.3d at 384. Like *Portalatin*, Plaintiff's claims against Rosebud Lending and the 777 Defendants stem from the same conduct. *Cf. Portalatin*, 900 F.3d at 384 *with* Compl., ¶¶ 12, 98-100, No. 22-cv-750, ECF 1. And, like *Portalatin*, Plaintiff's settlement agreement resolves all claims arising out of the facts alleged in or capable of being alleged in this federal action. *Cf. Portalatin*,

4

900 F.3d at 382 *with* Ex. A, ¶ B. Using settlement proceeds to pay counsel does not defeat mootness.

Although the allocation is irrelevant to this Court's analysis, Plaintiff's allocation of ██ percent of the settlement proceeds also suggests bad faith. Plaintiff and his counsel agreed at the outset of the litigation that Plaintiff's counsel would receive a one-third attorney fee and filed a statement with the District Court asserting that Plaintiff's counsel claimed "a lien upon any recovery herein for 1/3 or such amount as a court awards." Compl. at 18. Plaintiff now asserts the "or such amount as a court awards" means that he could allocate more than one-third of the settlement proceeds to counsel. Pl. Br. at 12. However, there has been no court award here, only a settlement, so there is no good-faith basis for allocating any more than one-third of the settlement proceeds to Plaintiff's lawyers.

The 777 Defendants are also unaware of any case involving a ██-percent attorney-fee allocation. Empirical research previously cited by this Court indicates that the average attorney's fee in class settlements is about 25 percent and, even in settlements involving smaller dollar amounts, the average is still closer to 30 percent. *See* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical Legal Stud. 811, 837-40 (2010) (cited in *In re Stericycle Sec. Litig.*, 35 F.4th 555, 561-62 (7th Cir. 2022) and *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013)). Even the high-end outlier in that research was less than 50 percent. Fitzpatrick, 7 J. Empirical Legal Stud. at 838 (Fig. 6).

That Plaintiff, of his own volition, opted to carve out ▮ percent of his settlement for his counsel is irrelevant to this Court's inquiry so long as the total settlement amount of $▮▮▮▮▮▮ provides more than the maximum amount of recovery to which Plaintiff is entitled, which it does.

## II. No Further Declaratory or Injunctive Relief Is Available to Plaintiff.

Plaintiff's settlement mooted any claims against the 777 Defendants for equitable relief because the 777 Defendants have no authority to collect on Plaintiff's one outstanding loan issued by Rosebud Lending. Plaintiff's obligations to repay that loan were resolved by the Settlement Agreement. Plaintiff entered into four loan agreements with Rosebud Lending. Compl. ¶¶ 26, 33-35. Plaintiff repaid the first three loans in full and repaid most of the fourth loan. Plaintiff sued Rosebud Lending and eventually entered into a separate settlement agreement with Rosebud Lending. That Settlement Agreement states that it resolves "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Ex. A, ¶ B.

Plaintiff has no reasonable basis to fear "further collection efforts[.]" Pl. Br. at 5.[1] Plaintiff repaid his first three loans and only the fourth loan from Rosebud Lending had any balance outstanding at the start of this litigation. Compl. ¶¶ 26, 33-35. As a result of the Settlement Agreement, all claims between Rosebud and Plaintiff concerning Plaintiff's loans are resolved and there are no remaining

---

[1] To support his assertion that the 777 Defendants collect on Rosebud Lending's loans, Plaintiff cites to a brief in which Plaintiff made an identical assertion, not to any evidence in the record. Pl. Br. at 5 (citing Pl. Opp'n to Defs. Mot. to Compel R 1, No. 22-cv-750, ECF 84).

6

grounds for any party to seek to collect more from Plaintiff. For that reason and because Plaintiff never entered into a loan agreement with the 777 Defendants, the 777 Defendants have no right to attempt to collect on the one unsatisfied loan between Plaintiff and Rosebud Lending. To the extent Plaintiff has alleged that the 777 Defendants have assisted Rosebud Lending with past collection efforts, such collections occurred only at the direction of Rosebud Lending as the lender and owner of the debt. Since Plaintiff has settled his claims against Rosebud Lending, including any claims Rosebud Lending might have had related to the single outstanding loan, there is no possibility of future collections against the Plaintiff related to any of the loans at issue in this litigation and therefore no declaratory or injunctive relief that could benefit the Plaintiff individually.[2]

Plaintiff attempts to bolster his claim for declaratory and injunctive relief by claiming such relief would have a potentially beneficial effect on the members of the putative, but uncertified, class. Pl. Br. at 6. This argument gives away the game. While other members of the putative class may have the ability to seek further relief, this Plaintiff does not. Deprived of his personal stake in the outcome of the litigation by his voluntary settlement with Rosebud Lending, Plaintiff may not continue to serve as a figurehead class representative. "It takes a representative with a live claim to carry on with a class action." *Premium Plus Partners, L.P. v. Goldman, Sachs & Co.*, 648 F.3d 533, 538 (7th Cir. 2011) (citations omitted).

---

[2] Plaintiff cannot credibly claim to need equitable relief regarding new loans he might obtain from Rosebud Lending in the future because Rosebud Lending ceased offering new loans at the end of last year. Levy Decl., ¶ 8.

### III. The Settlement with Rosebud Lending Provides Plaintiff with All Damages to Which He Would Be Entitled.

Plaintiff's alleged injury of being charged too much interest on his loans is indivisible. He therefore cannot aggregate multiple recoveries to manufacture a damage claim that exceeds his settlement amount. Nor can Plaintiff bring claims for punitive damages in the absence of a right to additional compensatory damages.

####    A.    Plaintiff May Not Aggregate Damage Claims under Different Theories for the Same Injury.

Plaintiff suggests that for the single, indivisible harm of being charged more interest than he alleges is permissible under Illinois law, he may aggregate his damages under separate theories of recovery alleged in Counts I, II, and III of the Complaint to reach a total damages claim of more than $158,000. Pl. Br. at 8. Plaintiff relies exclusively on *Merchandise Nat'l Bank of Chicago v. Scanlon*, 408 N.E.2d 248 (Ill. App. Ct. 1980), to support this argument. *Id.* However, in *Merchandise Nat'l Bank* "there were three distinct and different injuries suffered" by the plaintiff. 408 N.E.2d at 253. Here, Plaintiff only has one alleged injury—that he was charged more interest on his loans than Illinois law permits.[3]

If Plaintiff prevailed at trial on all four of his claims, he would be entitled to the largest of four awards but not the sum of the four. *Portalatin*, 900 F.3d at 383 (only one recovery "regardless of . . . how many different theories of recovery could apply" to a single injury) (citation omitted); *Duran v. Town of Cicero, Ill.*, 653 F.3d

---

[3] Plaintiff's loan agreements expressly provide that federal law and the laws of the Rosebud Sioux Tribe, and not state law, will govern the loans, including the rate of interest. Compl., Ex. D at 3, ECF 1-2.

632, 640 (7th Cir. 2011) ("[D]amages are not assessed by defendant or by claim but for an injury.") (internal quotation marks and citation omitted). Plaintiff cites no federal or Illinois case in which a Plaintiff has been permitted to recover cumulative damage awards under theories of restitution <u>and</u> under the Illinois Interest Act <u>and</u> under the Illinois Predatory Loan Prevention Act <u>and</u> under the Illinois Consumer Fraud Act <u>and</u> RICO for the same loan transaction. That is unsurprising because obtaining multiple recoveries for a single, indivisible injury is prohibited.

    B.    <u>Plaintiff's Claim for Punitive Damages under a Single State Law Claim Does Not Support Continuing Federal Jurisdiction.</u>

Plaintiff's claim for punitive damages is based on Illinois law, which does not permit an award of punitive damages in the absence of compensatory damages. *McGrew v. Heinold Commodities, Inc.*, 497 N.E.2d 424, 429 (Ill. App. Ct. 1986) ("Punitive damages can only be awarded when there is an award of compensatory damages.") (citations omitted). Here, for reasons already stated, Plaintiff is no longer entitled to compensatory damages. State law prohibits him from proceeding to trial on fully satisfied claims in the hopes of obtaining even more in punitive damages from the remaining Defendants.

Plaintiff asserts he may recover additional punitive damages against the 777 Defendants under Count III of his Complaint, which seeks relief for alleged violations of state law. Pl. Br. at 9 (citing *Minix v. Canarecci*, 597 F.3d 824, 830 (7th Cir. 2010)). However, *Minix* is distinguishable from the present case. *Minix* expressed a justified skepticism that $75,000 was full compensation to a mother for the death of her son while in custody. *Id.* Additionally, the settlement had been paid

9

by an official-capacity defendant who, as a matter of law, could not have been liable for punitive damages. *Id.* Here, Plaintiff's settlement amount exceeds the amount of all of his claims, including punitive damages, making it impossible to reach the conclusion reached in *Minix* that no portion of the settlement could be attributed to punitive damages.

Additionally, in *Minix*, the plaintiff alleged wrongful death under 42 U.S.C. § 1983 and supplemental state law claims. Under § 1983, federal law (not state) governs the availability of punitive damages. *Bass by Lewis v. Wallenstein*, 769 F.2d 1173, 1190 (7th Cir. 1985). Here, by contrast, Plaintiff's claims for punitive damages rest entirely on state law. Although *McGrew* prohibits an award of punitive damages in the absence of a live claim for compensatory damages, if this Court nonetheless concludes that the sole surviving issue in Plaintiff's case against the 777 Defendants is a claim for additional punitive damages under Illinois state law, there is no basis for this case to remain in federal court. *Rivera v. Allstate Ins. Co.*, 913 F.3d 603, 617-18 (7th Cir. 2018).

## CONCLUSION

Plaintiff rendered his claims moot when he voluntarily settled with his lender (Rosebud Lending) for more than his maximum damages. Plaintiff's voluntary and unilateral allocation of ■ percent of the settlement proceeds to his lawyers does not avoid this result. What matters is the amount Plaintiff recovered, regardless of whether he gave that money to counsel or decided to burn a pile of cash.

Having settled in full with his lender, Plaintiff has no need for further declaratory or injunctive relief against future collection efforts. Because he no

longer has a personal stake in the litigation, he may not serve as a class representative.

Plaintiff is not entitled to aggregate multiple recoveries for the same indivisible alleged injury or assert a right to additional punitive damages under state law in the absence of compensatory damages.

Accordingly, the 777 Defendants respectfully request that this Court vacate the District Court's order and remand with instructions to dismiss Plaintiff's individual claims with prejudice and his class claims without prejudice.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | /s/ *Patrick O. Daugherty* |
| Scott P. Clair | Patrick O. Daugherty |
| SCOTT CLAIR LAW | Nakia Arrington |
| 166 W. Washington Street | VAN NESS FELDMAN, LLP |
| Suite 400 | 2000 Pennsylvania Avenue, NW |
| Chicago, IL 60602 | Suite 6000 |
| Telephone: (847) 372-6374 | Washington, DC 20006 |
| Email: sclair@scottclairlaw.com | Telephone: (202) 298-1800 |
|  | Email: pod@vnf.com |
|  | narrington@vnf.com |
|  |  |
|  | Charlene Koski |
|  | VAN NESS FELDMAN, LLP |
|  | 1191 Second Avenue, Suite 1800 |
|  | Seattle, WA 98101 |
|  | Telephone: (206) 623-9372 |
|  | Email: ckoski@vnf.com |
|  |  |
|  | *Counsel for Defendants-Appellants* |

Dated: March 1, 2024

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 27(d), I hereby certify that the foregoing Reply in Support of Contested Motion to Vacate the Judgment of the District Court and Remand with Instructions to Dismiss As Moot has been prepared in a proportionally spaces typeface (using Microsoft Word 365, in 12-point Century Schoolbook font) and contains 2,533 words total.

                                          Respectfully submitted,

                                          /s/ *Patrick O. Daugherty*
                                          Patrick O. Daugherty

Dated: March 1, 2024

# CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2024, I electronically filed the Reply in Support of Contested Motion to Vacate the Judgment of the District Court and Remand with Instructions to Dismiss As Moot with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Patrick O. Daugherty*
Patrick O. Daugherty